**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**Columbia Division**

| | |
|---|---|
| LEKEDRA WOODS-HALL,<br><br>                            Plaintiff,<br><br>  -v.-<br><br>TRANS UNION, LLC;<br>EQUIFAX INFORMATION SERVICES, LLC;<br><br>                            Defendants. | C.A. No:  3:23-cv-05499-SAL<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Lekedra Woods-Hall ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendant Trans Union, LLC ("TransUnion"), and Defendant Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"), based upon information and belief of the Plaintiff's counsel, except for allegations specifically pertaining to the Plaintiff, which are based upon the Plaintiff's personal knowledge.

**INTRODUCTION**

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

**JURISDICTION AND VENUE**

1

2. The Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p ("FCRA") (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District since the Plaintiff resides here.

## PARTIES

4. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the city of Columbia, County of Richland, State of South Carolina.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant TransUnion's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. TransUnion can be served at their Registered Agent c/o The Prentice-Hall Corporation System, Inc. located at 508 Meeting Street, West Columbia, South Carolina, 29169.

8. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at

1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29169.

9. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of South Carolina and conducted business in the State of South Carolina on a routine and systematic basis.

10. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

### *The Role of Credit Reporting Agencies*

12. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendants are two of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17. The Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. The Defendants obtain consumer information from various sources. Some consumer information is sent directly to the Defendants, and other information must be independently gathered by the Defendants, or acquired from third party providers, vendors, or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19. The Defendants also obtain information from other CRAs, who commonly share information.

20. The Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that the Defendants sell to third parties for a profit.

21. The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in the Defendants subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. The Defendants' unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

23. The Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in their own files.

24. The vast majority of institutions that offer financial services rely upon consumer reports from CRAs (like the Defendants) to make lending decisions.

25. The information the Defendants include in a consumer report contributes to a consumers' overall creditworthiness and determines their FICO Scores.

26. FICO Scores are calculated using information contained in the Defendants' consumer reports.

27. FICO Scores and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by the Defendants in consumer reports.

30. DTI compares the total amount a consumer owes to the total amount a consumer earns.

31. The Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by the Defendants.

32. A consumer's income, however, is not included in their consumer report; only the amount of debt is.

33. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34. Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

35. The Defendants are well aware that the effect a Discharge Order has on a consumer's pre-bankruptcy accounts.

36. The Defendants are also aware that certain accounts may still be paid outside of the bankruptcy.

37. However, the Defendants regularly report inaccurate information about consumers' debts after a bankruptcy is completed, such as including a balance when there is none or not marking an account as discharged through bankruptcy.

38. Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, the Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

39. The Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in the Defendants credit files, contained in public records that the Defendants regularly access, and/or sourced through the Defendants' independent and voluntary efforts.

40. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

41. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the Defendants for their inaccurate consumer reporting

following the completion of a Chapter 7 Bankruptcy, including failure to accurately report which debts were included in the bankruptcy.

42. Therefore, the Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Chapter 7 Bankruptcy*

43. On or around January 10, 2017, Plaintiff opened an account with Fingerhut/WebBank, hereinafter "Fingerhut Account."

44. On or around November 1, 2020, Plaintiff opened an account with Citibank, N.A., hereinafter "Citibank Account."

45. On or around December 30, 2022, Plaintiff filed for a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of South Carolina, petition no. 22-bk-03582.

46. An Order of Discharge was entered for Plaintiff's Chapter 7 Bankruptcy on March 29, 2023.

47. Upon information and belief, the Defendants received notice of Plaintiff's bankruptcy filings through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

48. The Defendants prepared one or more consumer reports concerning the Plaintiff after her bankruptcy was completed.

*Defendant TransUnion's Reports*

49. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

50. The Plaintiff reviewed her TransUnion credit report after receiving her discharge from her Chapter 7 Bankruptcy.

51. Upon information and belief, TransUnion prepared and issued credit reports (hereinafter, "TransUnion Reports") concerning the Plaintiff that included inaccurate and misleading information relating to her Fingerhut Account and Citibank Account.

52. The TransUnion Reports inaccurately report the status of the Fingerhut Account as having a balance of $479.

53. Additionally, the TransUnion Reports inaccurately report the status of the Citibank Account as "Collection/Chargeoff" with a balance of $1,403.

54. In actuality, the TransUnion Reports should have reported both the Fingerhut Account and Citibank Account as discharged accounts with zero balances.

55. TransUnion has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

56. TransUnion continued to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

57. TransUnion's reporting of the Fingerhut Account and Citibank Account is patently inaccurate.

58. If not patently inaccurate, TransUnion's reporting is materially misleading.

59. As a result of the TransUnion's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from

credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

*Defendant Equifax's Reports*

60.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

61.     The Plaintiff reviewed her Equifax credit report after receiving her discharge from her Chapter 7 Bankruptcy.

62.     Upon information and belief, Equifax prepared and issued credit reports (hereinafter, "Equifax Reports") concerning the Plaintiff that included inaccurate and misleading information relating to her Fingerhut Account.

63.     The Equifax Reports inaccurately report the status of the Fingerhut Account as having a balance of $479.

64.     In actuality, the Equifax Reports should have reported the Fingerhut Account as a discharged account with a zero balance.

65.     Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

66.     Equifax continued to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

67.     Equifax's reporting of the Fingerhut Account is patently inaccurate.

68.     If not patently inaccurate, Equifax's reporting is materially misleading.

69. As a result of the Equifax's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

*Plaintiff's Damages*

70. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

71. As a preliminary matter, the Defendants incorrectly reported certain accounts that were either included and discharged in Plaintiff's Chapter 7 Bankruptcy or were maintained outside of Plaintiff's Chapter 7 Bankruptcy.

72. Plaintiff's creditworthiness is lowered because Defendants continually disseminate incorrect information pertaining to Plaintiff's accounts.

73. As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of the Defendants reporting related to the Fingerhut Account and the Citibank Account.

74. TransUnion's consumer reports indicating that the Fingerhut Account and Citibank Account were not discharged in Plaintiff's Chapter 7 Bankruptcy causes severe damage to Plaintiff's creditworthiness and her financial wellbeing because the accounts are instead marked as closed, charged off, and extremely late, which are delinquent marks on a credit report.

75. Equifax's consumer reports indicating that the Fingerhut Account was not discharged in Plaintiff's Chapter 7 Bankruptcy causes severe damage to Plaintiff's creditworthiness and her financial wellbeing because the account is instead marked as closed, charged off, and extremely late, which are delinquent marks on a credit report.

76. These credit reports were created after the completion of Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

77. The Defendants' inaccurate reporting was published to multiple organizations, companies, and financial institutions by the Defendants after Plaintiff completed her Chapter 7 Bankruptcy.

78. As a result of the Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

79. Plaintiff's consumer credit file and consumer reports were reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by the Defendants.

80. On or around September 14, 2023, Plaintiff was denied a loan for a vehicle with TD Bank, and the denial letter TD Bank specifically mentions that TD Bank obtained Plaintiff's credit report from TransUnion when making its decision to approve or deny the Plaintiff.

81. TransUnion's inaccurate credit reports were sent to the following entities: The Bank of Missouri – Milestone, Midlands Honda, and TD Auto Finance.

82. Equifax's inaccurate credit reports were sent to Safe Federal Credit Union twice, once on May 4, 2023 and then again on July 3, 2023.

83. As a direct result of Defendants' inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

84. As a direct result of Defendants' inaccurate reporting, Plaintiff also suffered actual damages in the form of attorneys' fees incurred.

85. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

*TRANSUNION'S VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e et seq.*

86. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

87. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like TransUnion, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

88. TransUnion negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

89. TransUnion received notice of Plaintiff's bankruptcy through public records, independent collection of consumer information directly obtained by TransUnion through sources of consumer information such as Lexis-Nexis, TransUnion's own files, and information provided by data furnishers, yet TransUnion misapplied that information.

90. TransUnion's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff, who file bankruptcies.

91. TransUnion's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

92. TransUnion's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

93. TransUnion know the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

94. In this instance, the inaccurately reported Fingerhut Account and Citibank Account were accounts that TransUnion knew were included in Plaintiff's Chapter 7 Bankruptcy, because these accounts were listed on Plaintiff's Chapter 7 Bankruptcy Petition and incurred prior to the bankruptcy being filed.

95. However, TransUnion reported the Fingerhut Account and Citibank Account as accounts that were not discharged in Plaintiff's Chapter 7 Bankruptcy and were reported with unpaid balances.

96. TransUnion's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because TransUnion regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

97. TransUnion knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

98. The obligations for TransUnion are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving TransUnion.

99. Therefore, TransUnion has ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

100. If TransUnion contends that it did not have sufficient notice, TransUnion must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

101. TransUnion regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

102. In this case, TransUnion knew or should have known that the Fingerhut Account and Citibank Account were included in Plaintiff's Chapter 7 Bankruptcy and were discharged.

103. Unfortunately, TransUnion willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

104. Despite knowledge of their legal obligations, TransUnion violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

105. TransUnion knows that an account that was included in a Chapter 7 Bankruptcy Petition should be marked as discharged once an Order of Discharge has been entered.

106. TransUnion knew or should have known the information it reported about the Fingerhut Account and Citibank Account was inaccurate.

107. TransUnion violated 15 U.S.C. § 1681e(b) by failing to report accurate information when TransUnion knew or should have known that the information TransUnion is reporting is inaccurate, and/or otherwise contradicted by information known by TransUnion, reported to TransUnion, and/or reasonably available to TransUnion.

108. TransUnion's violations of 15 U.S.C. § 1681e(b) were willful.

109. Alternatively, TransUnion's violations of 15 U.S.C. § 1681e(b) were negligent.

110. TransUnion's inaccurate reporting damaged Plaintiff's creditworthiness.

111. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by TransUnion's failure to report the Fingerhut Account and Citibank Account as discharged through Plaintiff's Chapter 7 Bankruptcy.

112. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

113. TransUnion's actions are a direct and proximate cause of Plaintiff's damages.

114. TransUnion's actions are a substantial factor in Plaintiff's damages.

115. Therefore, TransUnion is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT II

*EQUIFAX'S VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e et seq.*

116. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

117. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

118. Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

119. Equifax received notice of Plaintiff's bankruptcy through public records, independent collection of consumer information directly obtained by Equifax through sources of consumer information such as Lexis-Nexis, Equifax's own files, and information provided by data furnishers, yet Equifax misapplied that information.

120. Equifax's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff, who file bankruptcies.

121. Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

122. Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

123. Equifax know the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

124. In this instance, the inaccurately reported Fingerhut Account was an account that Equifax knew was included in Plaintiff's Chapter 7 Bankruptcy, because the Fingerhut Account was listed on Plaintiff's Chapter 7 Bankruptcy Petition and incurred prior to the bankruptcy filing.

125. However, Equifax reported the Fingerhut Account as an account that was not discharged in Plaintiff's Chapter 7 Bankruptcy and was reported with an unpaid balance.

126. Equifax's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because Equifax regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

127. Equifax knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

128. The obligations for Equifax is established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Equifax.

129. Therefore, Equifax has ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

130. If Equifax contends that it did not have sufficient notice, Equifax must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

131. Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

132. In this case, Equifax knew or should have known that the Fingerhut Account was included in Plaintiff's Chapter 7 Bankruptcy and was discharged.

133. Unfortunately, Equifax willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

134. Despite knowledge of their legal obligations, Equifax violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

135. Equifax knows that an account that was included in a Chapter 7 Bankruptcy Petition should be marked as discharged once an Order of Discharge has been entered.

136. Equifax knew or should have known the information it reported about the Fingerhut Account was inaccurate.

137. Equifax violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known that the information Equifax is reporting is inaccurate, and/or

otherwise contradicted by information known by Equifax, reported to Equifax, and/or reasonably available to Equifax.

138. Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

139. Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

140. Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

141. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax's failure to report the Fingerhut Account as discharged through Plaintiff's Chapter 7 Bankruptcy.

142. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

143. Equifax's actions are a direct and proximate cause of Plaintiff's damages.

144. Equifax's actions are a substantial factor in Plaintiff's damages.

145. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **DEMAND FOR TRIAL BY JURY**

146. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Lekedra Woods-Hall respectfully requests that this Honorable Court enter judgments against Defendants for the following:

    a. Declaratory judgment that Defendants violated the FCRA at 15 U.S.C. § 1681e(b);

b.  An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

c.  An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

d.  An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

e.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

f.  Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

Dated: October 30, 2023

Respectfully Submitted,
*/s/ Dawn M. McCraw*
Dawn M. McCraw (SC # 105059)
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
E: dmccraw@consumerattorneys.com
*Attorneys For Plaintiff*